U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 FEB 22 PM 4:59

CLERK
BY RM
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

J.W. SANDRI, INC., )
)
    Plaintiff, )
)
v. ) Case No. 11-cv-23
)
RANDY HOWE'S SUNOCO, INC., )
)
    Defendant. )

**OPINION AND ORDER GRANTING
DEFENDANT'S RULE 11 MOTION FOR SANCTIONS**
(Doc. 27)

    This matter comes before the court on Defendant's motion for sanctions (Doc. 27) pursuant to Fed. R. Civ. P. 11(c), which allows the court to "impose appropriate sanctions on any attorney . . . that violated the rule or is responsible for a violation." Defendant seeks sanctions and an order requiring Plaintiff "to return $27,712.71 to the Defendant as it exceeds the amount of security the Plaintiff sought in the first instance." (Doc. 33 at 3.) Plaintiff opposes the motion, arguing Plaintiff's evidence about the accounts in question was not "baseless," and Plaintiff did not gain any advantage if it understated the amount of funds it held. At issue is whether Plaintiff made false representations to the court that Plaintiff had no "other security" in a filed paper and during an evidentiary hearing, and, if so, whether a sanction is warranted. The parties waived oral argument.

    Plaintiff is represented by Michael F. Hanley, Esq. Defendant is represented by William L. Durrell, Esq.

**I.    Factual and Procedural Background.**

    This case involves a contractual dispute between a gasoline distributor and a retail franchisee wherein Plaintiff alleges that Defendant breached the parties' contract and

owes Plaintiff damages in the amount of $103,942.00 as of January 1, 2009, excluding attorney's fees and costs. Defendant denies that it breached the parties' contract.

On December 31, 2010, Plaintiff sent Defendant documents which indicated that Plaintiff held two accounts in Defendant's name with balances of $9,897.46[1] and $25,315.25, respectively. Thereafter, on January 24, 2011, Plaintiff filed a motion for writ of attachment and represented under oath that it "[did] not know, or [have] reason to know, of any liability insurance, bond, or other security which would be available to satisfy the judgment." (Doc. 2 at 3.) On the same day, Plaintiff's attorney filed a certificate which, among other things, stated: "I do not know, or have reason to know, of any bond or other insurance agreement which would be available to satisfy any judgment against the Defendant in this action." (Doc. 2-3.)[2]

On March 22, 2011, the court held an evidentiary hearing on Plaintiff's motion for writ of attachment. In the course of cross-examination, Defendant's counsel confronted Michael Behn, Plaintiff's chief operating officer, with a statement made by Randy Howe that he believed Mr. Behn was "holding onto commissions of his in the neighborhood of $40,000," and he asked whether Mr. Behn agreed. (Doc. 22 at 31.) The following exchange took place:

> Mr. Behn: Not to the exact number, but we're holding a large amount of security deposit from Randy.
>
> Mr. Durrell: Are you holding onto commissions in addition to the security deposit?
>
> Mr. Behn: No. No. The security deposit.

(*Id.*) Although he was uncertain of the exact amount held, Mr. Behn testified that it was ascertainable by examining Plaintiff's records and books. Mr. Behn also testified that the security deposit Plaintiff was holding pursuant to Section 4 of the parties' contract was

---

[1] This amount represents Defendant's security deposit of $7,500, plus interest.

[2] This certification did not comply with Vt. R. Civ. P. 4.1(b)(3) which requires the movant's counsel to certify "the amount of any liability insurance, bond, or other security which the attorney knows or has reason to believe is available to satisfy any judgment against the defendant in the action."

2

approximately $7,500. Shortly thereafter, Plaintiff's attorney asked the following question:

> Mr. Hanley: Are you aware of any evidence, Mr. Behn, that any Sandri Company is withholding commissions due to Mr. Howe or his business organization?
>
> Mr. Behn: No. In fact, I'm certain we've paid all commissions. They may be laying on accounts that he has not chosen to close. But the commission payment is automatic.

(*Id.* at 34.)

In the course of the hearing, Steven Dix, Plaintiff's comptroller who primarily oversees Plaintiff's accounting and record keeping, testified that he did not know the amounts of the security deposit or commissions Plaintiff was holding for Mr. Howe, but that those amounts could be determined by examining Plaintiff's computerized records. (*Id.* at 51-52.)

At the conclusion of the court's hearing, Plaintiff's attorney stated: "There is zero evidence of any commissions being withheld, none whatsoever." (*Id.* at 56.) The court subsequently found that Plaintiff retained a security deposit valued at $7,500. The court ordered an attachment amount of $111,442, which represented the net present value of Plaintiff's alleged lost profits as of January 1, 2009, excluding attorney's fees and costs. The court then reduced the face value of the attachment by $7,500 in consideration of Plaintiff's retention of the security deposit. Finally, the court found that "[t]here [was] no other bond, assurance, or security available to satisfy the judgment[.]" (*Id.* at 61.)

On July 25, 2011, several months after the attachment hearing, Plaintiff's counsel confirmed during an email exchange that Plaintiff was, in fact, holding additional money belonging to Defendant in addition to the $7,500 security deposit:

> Sandri holds $7,500 plus interest in the collateral deposit account required under the contract between our clients. As you will recall, the collateral deposit account was brought to Judge Reiss'[s] attention during the hearing on the motion to attach, and she deducted the amount of the collateral account from the amount of the attachment.

3

> Mike [Behn] and I were surprised to learn that after Mr. Howe stopped selling gasoline, he continued to use a Sandri credit card account. Sandri holds about $23,500 in this account.
>
> Sandri is willing to reduce the amount of its attachment to reflect the current balances in both accounts, excluding, of course, the $7,500 already deducted by Judge Reiss. This would result in a reduction of the face amount of the attachment of approximately $25,000. If you confirm that you wish to proceed in this fashion, I will prepare a proposed stipulation and order.

(*See* Doc. 29-6 at 2.)

Defendant twice rejected Plaintiff's proposal to stipulate to the reduction of the face amount of the attachment before filing the current motion for sanctions.

## II. Legal Analysis and Conclusions.

Defendant argues that Plaintiff's representation to the court that there was no "other security" to satisfy a judgment was false and warrants a sanction because Plaintiff failed to conduct a reasonable inquiry which would have revealed that it "had more than $23,500 of the Defendant's money[.]" (Doc. 27 at 3.) In support of this contention, Defendant notes that Plaintiff provided documents to Defendant in December of 2010, prior to filing the motion for writ of attachment, which indicated Plaintiff held two accounts in Defendant's name. One of these accounts was the security deposit plus interest, and the other account contained a credit balance of $25,315.25. Furthermore, Plaintiff's first filings with the court did not include the existence or amount of the security deposit, making the motion for writ of attachment and the certification inaccurate at the time they were filed. Defendant points to testimony given at the March 22, 2011 hearing and the email exchange between the parties, which Defendant contends establishes Plaintiff's awareness of the fact that it was holding other security when it filed its pleading or shortly thereafter.

Plaintiff counters that its evidence at the hearing on the motion made clear that Plaintiff was holding $7,500 in a security account as well as "a large amount" in another account. Although Plaintiff's witnesses did not provide a dollar amount for the other account at the hearing, Plaintiff contends that this testimony provided evidentiary support

4

as to the value of funds Plaintiff was holding. The court disagrees. At best, Plaintiff's witnesses testified that they were holding a "security deposit" that was described as "a large amount" but denied that Plaintiff was holding other amounts—a conclusion reinforced by Plaintiff's counsel's representation to the court that "[t]here is zero evidence of any commissions being withheld, none whatsoever." (Doc. 22 at 56.) Against this backdrop, the court considers first whether Plaintiff has violated Rule 11 and, if so, whether a sanction is warranted.

### A. Whether Plaintiff Violated Rule 11.

Rule 11(b) provides in pertinent part that, by presenting a pleading, written motion, or other paper to the court, the attorney signing or filing such document is certifying "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support[.]" Fed. R. Civ. P. 11(b)(3). "Limiting the application of [R]ule 11 to testing the attorney's conduct at the time a paper is signed is virtually mandated by the plain language of the rule." *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir. 1986).

If relevant facts are capable of being ascertained, Rule 11 imposes a duty of reasonable inquiry. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) ("Rule 11 . . . imposes an objective standard of reasonable inquiry[.]"); *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) ("Federal Rule 11 of Civil Procedure explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the validity of a pleading before it is signed.") (internal quotation marks omitted); *Maine Audubon Soc'y v. Purslow*, 907 F.2d 265, 268 (1st Cir. 1990) ("We hold counsel to standards of due diligence and objective reasonableness-not perfect research or utter prescience.").

Here, the court first finds that Plaintiff's counsel violated Rule 11(b) based on the motion for writ of attachment, filed on January 24, 2011. The December 31, 2010 document which Plaintiff sent to Defendant indicated that Plaintiff held an account in Defendant's name with a balance of $25,315.25, in addition to the amount the parties recognize was held as a security deposit. Nevertheless, Plaintiff failed to disclose *both*

5

the existence of the security deposit *and* the additional credit balance to the court in its motion for writ of attachment. Plaintiff's filing therefore violated Rule 11.

Second, the court concludes that Plaintiff's counsel should have better prepared his witnesses for their testimony at the hearing, particularly if the exact amount of Defendant's money Plaintiff was holding was readily available from a review of Plaintiff's records. *See* Fed. R. Civ. P. 11(b) (obligating an attorney to conduct "an inquiry reasonable under the circumstances" before advocating for a written motion). Plaintiff's own witnesses were unclear regarding whether the additional money held was the $7,500 security deposit, but both witnesses agreed that the amount could be determined by examining Plaintiff's records. Rather than withdrawing or staying the motion in order to investigate further, Plaintiff still requested the full amount of the attachment minus the security deposit. This conduct constituted a second violation of Rule 11 because Plaintiff clearly held an amount above and beyond the security deposit, which amount was discernible through a minimal amount of investigation.

Finally, Plaintiff's counsel's representation to the court that "[t]here is zero evidence of any commission being withheld, none whatsoever" was materially misleading as it suggested that no amounts other than the security deposit were being held.

### B. Whether the Court Should Award a Sanction.

"Rule 11(c) . . . allows the court to sanction a party, if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008); Fed. R. Civ. P. 11(c). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Serious violations ordinarily require a sanction.

> Obviously, a pattern of wrongdoing may require a stiffer sanction than an isolated incident; a grave wrongdoing may compel a more severe sanction than might a minor infraction; and wrongdoing that actually prejudices the wrongdoer's opponent or hinders the administration of justice may demand

a stronger response than wrongdoing that, through good fortune or diligence of court or counsel, fails to achieve its untoward object.

*Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). "Even if the district court concludes that the assertion of a given claim violates Rule 11, however, the decision whether or not to impose sanctions is a matter for the court's discretion." *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).

The Advisory Committee's Notes to the 1993 amendment to Rule 11 list the factors a district court should consider in deciding an appropriate sanction:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11 Advisory Committee's Note, 1993 amendment.

> Another factor federal courts have considered in exercising their discretion is the behavior of the moving party. If that party is also at fault, a court may determine that no Rule 11 violation has occurred, or it may reduce the sanction. When this factor, which seems analogous to the ancient equity principle of unclean hands, is added to the scope of the Advisory Committee's list, it is clear that a district court has the widest possible latitude under the present language of the rule.

5A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1336.1 (3d ed. 2004).

In this case, the court has found three violations of Rule 11. The related nature of the violations within the context of the motion for writ of attachment indicates that they were part of a single course of conduct rather than three unrelated violations. Plaintiff's counsel is trained in the law, and the violations have caused Defendant to incur the prejudice of an artificially inflated attachment and the additional expense of filing a motion for sanctions.

7

On the other hand, there is no evidence that Plaintiff's counsel acted in bad faith, was motivated by ill will, or acted with an intent to deceive. The violations were the result of a lack of due diligence and reasonable inquiry, not an effort to perpetuate a fraud upon the court. Plaintiff's further argument that there was no prejudice to Defendant because, although "the fact amount of the attachment would be smaller, . . . it is the fact of the attachment, not the face amount of the attachment which protects [Plaintiff]" (Doc. 29 at 8.) is misplaced. The amount of an attachment is hardly immaterial as a writ of attachment becomes a public record when issued, and again when recorded, and may be used by others to decide whether to extend credit to the owner of the property attached.[3] Moreover, attachment is a special remedy that occurs prejudgment and requires only a reasonable likelihood of prevailing on the merits. *See* V.R.C.P. 4.1(b)(2) (stating writ of attachment shall issue upon "a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment and over and above any liability insurance, bond, or other security shown . . . to be available to satisfy the judgment."). For this reason, it is important to ensure the accuracy of all information regarding other security available to satisfy the judgment. *See Four Star Fin. Servs., LLC v. Commonwealth Mgmt. Assocs.*, 166 F. Supp. 2d 805, 809 (S.D.N.Y. 2001) ("Because in making the application for a writ of attachment Respondents knew that the Court would be required to place particular trust in the truth of the Verified Complaint's sworn statements, they had a heightened obligation to insure that the facts were accurately portrayed.").

Finally, the court must consider whether Plaintiff tried to mitigate any prejudice once the inaccuracies were discovered. *See* Fed. R. Civ. P. 11(c)(2) (prohibiting the filing of a motion for sanctions if the challenged paper "is withdrawn or appropriately

---

[3] *See* Vt. R. Civ. P. 4.1 Reporter's Notes (recognizing an issued writ of attachment and the subsequent lien on real property is "a deprivation of the use of property and may well work significant hardship upon defendants."); *Chandler v. Dyer*, 37 Vt. 345, 345 (1864) (holding an attachment on land creates a specific lien in favor of the creditor, which vests in the attaching creditor a right in equity to redeem the land even before judgment).

8

corrected within 21 days after service [of the motion]"). In this case, on July 25, 2011, Plaintiff's counsel informed Defendant's counsel of the precise amount it was holding and twice offered to reduce the face value of the attachment. Defendant's rationale for rebuffing these offers is not apparent. However, Plaintiff should have proceeded to correct the record before the court and the amount of the attachment notwithstanding Defendant's refusals. *See Payne v. Fontenot*, 925 F. Supp. 414, (M.D. La. 1995) (stating Rule 11's obligation to make a reasonable inquiry into the law and the facts "continues during the pendency of the suit."); *Meadow Ltd. P'ship v. Heritage Sav. & Loan Assoc.*, 118 F.R.D. 432, 434 (E.D. Va. 1987) ("The duty under Rule 11 to inquire into the facts is a continuing duty and counsel cannot ignore the realities of life once facts come to their attention which indicate that their earlier reliance was misplaced.").

Pursuant to the discretionary nature of Rule 11 sanctions, the court concludes that, as a sanction, Defendant is entitled to compensation from Plaintiff for the cost of filing the motion for sanctions. Rule 11 sanctions are sometimes paid by the attorney and sometimes by the client. *See Salovaara v. Eckert*, 222 F.3d 19, 33 (2d Cir. 2000) ("Rule 11 permits a court to impose sanctions upon attorneys, law firms, or parties for making or causing to be made certain improper representations to the court."). Here, it appears that Plaintiff's counsel was primarily in error because he drafted the motion for writ of attachment and decided how to present the testimony of Plaintiff's witnesses. He also presumably handled the documents disclosing the amounts held by Plaintiff. *See Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 382-83 (11th Cir. 1992) (affirming district court's imposition of attorney's fees and expenses pursuant to Rule 11 on plaintiff's attorney, rather than plaintiff, where it was the attorney, and not the plaintiff, who breached the duty of reasonable inquiry).

## ORDER

For the reasons stated above, Defendant's Rule 11 motion is hereby GRANTED. (Doc. 27). Within fourteen (14) days of this Order, Defendant shall file an affidavit setting forth the reasonable attorney's fees and costs incurred in filing the motion for sanctions. In addition to paying those amounts upon approval by the court, Plaintiff is

9

hereby ORDERED to file forthwith an updated proposed order of approval and writ of attachment. *See* Fed. R. Civ. P. 11(c)(4) (allowing the court to impose a sanction that "include[s] nonmonetary directives"). Plaintiff shall record the same within ten (10) days of its issuance by the court.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 22nd day of February, 2012.

Christina Reiss, Chief Judge
United States District Court

STRICKEN pursuant to 3/8/2012 Document No. 43

10